In the Matter of the Estate of HERBERT J. CARR, Deceased.

Surrogate's Court, New York County, May 13, 1941.

*Proskauer, Rose & Paskus* [*George F. Kurzman* and *Charles Looker* of counsel], for the petitioners.

*Leonard M. Wallstein* [*Leonard M. Wallstein, Jr.,* of counsel], for Augusta G. Carr, respondent.

*Frank Aranow,* special guardian.

FOLEY, S. In this accounting proceeding, a preliminary issue is presented by the request of the executors and trustees for a construction of paragraph seventh of the will. The principal question is whether, in the trust for the benefit of the widow, the testator intended to impose upon his trustees an imperative obligation to invade the principal of the trust so as to produce a certain monthly income for the widow, or whether he intended to repose in them a discretionary power so to do. A subordinate question is presented by the petition of the trustees as to whether certain income taxes

claimed by the Federal government, but not yet finally adjudicated, shall be charged against the widow as life tenant if the direction for invasion in the will is held to be mandatory by the surrogate.

Herbert J. Carr died March 13, 1931, and was survived by his widow and two children, the issue of a prior marriage. The value of his estate at the time of his death was upwards of one and one-half million dollars. The principal provision for the benefit of the widow is contained in paragraph seventh of the will, which, in so far as material here, reads as follows: " If at the time of my death, my wife Augusta G. Carr, shall survive me under either of the following conditions: (1) that our marriage shall not have been dissolved by divorce obtained either within or without the United States, or (2) that our marriage shall have been dissolved by divorce but said Augusta Carr shall not have remarried up to the time of my death, I give and bequeath unto my Executors  *  *  * the sum of Two Hundred and Fifty Thousand Dollars, for them to have and to hold the same in trust " and to pay the net income and profits therefrom " in equal monthly installments, unto my said wife Augusta G. Carr, until her death or until her remarriage, whichever event shall first occur. I do hereby specifically authorize and empower my said Executors and Trustees, the survivor and survivors, successor and successors of them, if the net rents, issues, income and profits from said fund shall not in any year be sufficient to pay to the said Augusta Carr the monthly sum of One Thousand Dollars, to advance and pay to the said Augusta Carr out of the princ'pal of the said fund so held in trust, whatever amount may be required, in addition to the actual net rents, issues, income and profits, to give her in the aggregate a monthly allowance of One Thousand Dollars."

Since the year 1935 the income from the fund has not in any year been sufficient to pay to the widow the stipulated monthly sum. Nevertheless, payments up to that amount have been made during the entire period covered by the account, and the trustees have for that purpose invaded the corpus to the extent of more than eleven thousand dollars. The controversy with respect to the future administration of the fund appears largely to have been precipitated by the claim of the Federal taxing authorities that the trust is an annuity trust and that the income tax must be paid by the trustee. This situation has resulted in a further division of opinion between the widow and the trustees as to their obligation to make payments to her without deduction for any tax that may be levied against them.

On the issue as to whether the invasion of principal is mandatory or discretionary, the single problem is the ascertainment of the

particular intent of the testator. The words " authorize and empower," as used in this paragraph of the will, are the subject of much argument. Many decisions are cited by counsel for the respective parties to sustain their contention that the words import mere permission (*People ex rel. Otsego County Bank* v. *Board of Supervisors*, 51 N. Y. 401, 406; *Matter of Merritt*, 124 Misc. 709), or that they are mandatory. (*Ayers* v. *Courvoisier*, 101 App. Div. 97; *Matter of Miller*, 64 Misc. 232; modfd., 138 App. Div. 885; affd., 199 N. Y. 564; *Matter of Borden*, 159 Misc. 766, 770; *Matter of Taft*, 144 id. 896.) These decisions, interpreting as they do, different documents, are of slight assistance here. They serve only to confirm the proposition that in the search for intent the court will not attribute to disjointed phrases a meaning which they will not bear when set in their context. The testamentary intent must be gathered from the will as a whole. (*Matter of Schliemann*, 259 N. Y. 497, 503; *Matter of Neil*, 238 id. 138, 140.) " The language of each will leads to its own conclusion. No two persons are alike; neither are their wills. * * * We still take each document on its own merits. Either for good or ill, a testament has no progeny. Each is a new creation." (*Matter of Watson*, 262 N. Y. 284, 297.)

The will of this decedent discloses that in addition to the trust for the benefit of the widow, two relatively small provisions were made for her, a cash bequest of five thousand dollars and a bequest of furnishings and furniture located in his home. Generous provisions were made for his children. It appears that the widow was dependent upon the testamentary provision, and it is evident that the trust fund was intended to provide her principal support and maintenance. It is a general rule that " provisions in a will intended for the support of the wife, will receive the most favorable construction to accomplish the purpose intended." (*Thurber* v. *Chambers*, 66 N. Y. 42, 48; *Stimson* v. *Vroman*, 99 id. 74, 80.)

An examination of the language of the will makes it abundantly clear that the testator intended that the power of invasion of the corpus was to be mandatory. In providing for it, he used the words " specifically authorize and empower," a qualifying term which, as elsewhere employed, expressed for him the idea of the imperative. The authority was to pay to her whatever amount " may be *required* * * * to *give* her " the stated allowance. When it is remembered that this is the only substantial provision for her support, it becomes evident that he intended her to have that amount at least.

It is significant, moreover, that the testator addressed this direction not only to his trustees but to the " successor and successors of them," persons whose identity could not then be known

to him. If discretion as to payments for the support and maintenance of his wife were to be reposed in such persons, one would reasonably expect explicit direction as to the manner in which it was to be exercised The failure to use words expressly bestowing discretion becomes more impressive when one observes the many parts of the will where the testator expressed such an intent. In the twelfth paragraph of the will, the words " authorize and empower " are coupled with such phrases as " in their judgment and discretion," " in their discretion," " as they shall deem wise, expedient and proper," " as they deem it advisable," and such other terms indicating that when he intended to vest discretion in them he well understood how to express it.

It is of no significance here that the testator did not use the word " direct " instead of the terms " authorize and empower." Those terms were used indiscriminately by him, as, for example when he wrote, " I further authorize and direct them, in their discretion." The word " specifically " seemed to him a more apt word of command.

The surrogate, therefore, holds that under the seventh paragraph of the will the widow is entitled to receive all of the net income and profits of the trust, and in the event that such income shall not in any year be sufficient to pay her the monthly sum of one thousand dollars, she must be paid such sums from principal as will be necessary to make up the difference.

On the subordinate question as to the right of the trustees to deduct charges for Federal income taxes paid by them, the surrogate holds that the question is now academic. The trustees themselves admit that there has been no final determination of their obligation to pay such income taxes by the appropriate Federal authorities, upon the theory that the trust is an annuity trust and not an income trust. (*Helvering* v. *Butterworth*, 290 U. S. 365, 370.) They state that they have filed a petition to the United States Board of Tax Appeals to contest the attempted collection of the tax by the government. Further delay may be occasioned by a judicial review of the determination of such Board. The trustees state that they have paid no income taxes n the period covered by the account. It would be futile at this time, therefore, to construe the will or to give any instructions to the trustees upon this phase of the case until a final determination as to income tax liability or freedom from it is reached. If the trustees are successful, the question is wholly academic. In such situations the courts have consistently refused to construe the will until the happening of the actual eventuality. (*Looram* v. *Looram*, 269 N. Y. 296; *Matter of Mount*, 185 id. 162; *Matter of Franklin Trust Co.*, 190 App. Div. 575;

*Matter of Hance,* 180 N. Y. Supp. 269; affd., 192 App. Div 904; *Matter of Suydam,* 139 Misc. 845.) This subordinate question, therefore, is reserved for future determination upon a subsequent accounting or in some other appropriate form of proceeding.

Under the stipulation of the parties, objections to the account may be served and filed within ten days from the date of the publication of this decision.

Submit intermediate decree on notice construing the will accordingly.