Howard C. Smith, Trustee (Estate of James D. Smith) *v.* Madeleine B. Foord et al.

Inglis, C. J., Wynne, Daly, Shea and Covello, Js.

Argued May 4—decided July 3, 1956

*Francis P. Schiaroli,* with whom was *J. Walter Madigan,* for the defendant Cummings.

*William Reeves,* with whom were *Samuel A. Gilliland* and, on the brief, *Frederick Pope, Jr.,* for the named defendant et al.

*Paul C. Jamieson* appeared for the plaintiff.

DALY, J. This action, brought by the plaintiff, as the sole surviving trustee, for the construction of the will of James D. Smith, late of Stamford, comes to this court by reservation upon a stipulated set of facts. In and by article ninth of his will,[1] the testator directed that in the event that upon the death of his daughter Helen her son, James, did not survive her, one-half of the residuary trust estate

---

[1] "Ninth: In the event that upon the death of my said daughter Helen her said son James shall not survive her, (the trust above in the last preceding article of this my will in respect of one-half of my residuary property and estate for his benefit from and after the death of his mother thereby failing to take effect,) then upon the death of my said daughter I give, devise and bequeath the one-half part of my residuary estate, which under the provisions of the last preceding article of this my will would have been retained by my executors upon trust for my said grandson James, had he survived me and his said mother to other issue, if any, of my said daughter Helen, who shall survive her, to be divided between them, if more than one, per stirpes and not per capita; but if upon the death of my said daughter neither my said grandson nor any other issue of my said daughter shall survive her, then upon her death I give, devise and bequeath the said one-half part of my residuary property and estate above in the last preceding article of my will directed to be retained by my executors as trustees upon trust for the benefit of my said grandson had he survived me and his said mother, to the issue of my deceased son Archibald, to be divided between them, if more than one, in equal shares per stirpes and not per capita, in addition to the other one-half part thereof hereinabove in the last preceding article of this my will directed to be paid over and transferred to such issue of my deceased son upon the death of my said daughter."

should go to "other issue, if any, of my said daughter Helen, who shall survive her," but if upon her death neither James nor "any other issue" of Helen survived her, then it should go to the issue of the testator's deceased son Archibald. The court reserved for our consideration and advice the questions listed below.[2] The defendant Schuyler W. Cummings claims that this one-half of the residuary trust estate, together with all increments and income thereon, is distributable to him under the provisions of article ninth. The defendants Madeleine B. Foord, Elizabeth S. Berg and Louise S. Knobloch maintain that it is distributable to them, asserting that the words "other issue" in article ninth of the will do not include Cummings. They contend that, since the words "other issue" in the third paragraph of article eighth of the will[3] excluded Cummings, the same meaning

[2] "1. Is the remaining one-half part of the residuary estate distributable upon the death of Helen W. Smith, distributable under the provisions of said will to the defendant, Schuyler Woodruff Cummings, or is said property distributable to the defendants, Madeleine B. Foord, Elizabeth S. Berg and Louise S. Knobloch?

"2. Are the provisions under said will as to the ultimate disposition of said remaining one-half of the residuary estate, as suggested by the Trustee, so uncertain and ambiguous that said disposition is void for uncertainty and therefore said property passes not in accordance with the terms of said will but in accordance with the laws of the State of Connecticut relating to the distribution of intestate estates?

"3. If the said remaining one-half part of the residuary estate is not distributable to any of the persons described in question numbered 1 hereof, and is also not distributable in accordance with question numbered 2 hereof, to what person or persons is the said property distributable and in what manner?"

[3] "In the event that my said grandson James shall depart this life after the death of his mother and before attaining the age of forty years, I give, devise and bequeath the one-half part of my residuary property and estate above in this Eighth article of my will directed to be held in trust for his benefit from and after the death of his mother, or so much thereof as shall then remain in the hands of the trustees or trustee not theretofore paid over, transferred and delivered to my grandson pursuant to the power and authority for that purpose

must be given to these words in article ninth of the will.

The stipulated facts are these: The testator died on September 21, 1909, at the age of seventy-nine, leaving a will and two codicils thereto, each and all of which instruments were admitted to probate and approved as his last will and testament. His wife had predeceased him. The only descendants surviving him were his daughter, Helen W. Smith; her only son, James D. S. Cummings; and the defendants

hereinabove conferred upon the trustees or trustee of said trust fund, to the lawful issue of my said grandson who shall survive him to be divided between them, if more than one, in equal shares or proportions, per stirpes and not per capita; but if upon the death of my said grandson after the death of his mother and before attaining the age of forty years, no lawful issue of my said grandson shall survive him, then in that event upon his death I give, devise and bequeath the one-half part of my residuary property and estate above in this Eighth article of my will directed to be held in trust for his benefit after the death of his mother, or so much thereof as shall then remain in the hands of the trustees or trustee not theretofore paid over, transferred and delivered to my said grandson pursuant to the power and authority, for that purpose hereinabove conferred upon the trustees or trustee of the said fund, to other issue hereafter born if any, of my said daughter, to be divided between them if more than one in equal shares or proportions, per stirpes and not per capita; but if upon the death of my said grandson after the death of his mother, and before attaining the age of forty years neither issue of him nor other issue of his mother shall survive him, then upon his death (under the age of forty years as aforesaid), I give, devise and bequeath the one-half part of my residuary property and estate above in this Eighth article of my will directed to be held in trust for his benefit after the death of his mother, or so much thereof as shall then remain not paid over, transferred and delivered to him as aforesaid, to the issue then living of my deceased son Archibald to be divided between them, if more than one, in equal shares per stirpes and not per capita, so and in such manner that each of the daughters of my said deceased son who shall survive my said grandson shall take and receive one equal share thereof and the issue who shall survive my said grandson of each of said daughters of my deceased son who dying in the lifetime of my said grandson shall leave issue who shall survive him, shall together take, in representation of their mother, one equal share thereof."

Madeleine B. Foord, Elizabeth S. Berg and Louise S. Knobloch, daughters of the testator's son, Archibald H. Smith, who had died on April 24, 1906. Two other children of the testator, Mary L. Smith and Dickinson Smith, had also predeceased him, leaving no issue. On June 29, 1897, Helen was married to Homer S. Cummings, and their marriage was terminated by divorce on October 7, 1907. James was the only child of the marriage. Helen lived with her father, the testator, substantially at all times during her life until the time of his death. Her son, James, also resided with the testator substantially at all times from the time of his birth until the testator's death. Helen died on October 13, 1954. Her son, James, died on October 10, 1953, leaving as his only descendants his son, the defendant Schuyler W. Cummings, and the latter's daughter, Dana D. Cummings, both of whom survived Helen and are now living. The testator's other three grandchildren, Madeleine B. Foord, Elizabeth S. Berg and Louise S. Knobloch, lived with their father, Archibald H. Smith, and their mother about a quarter of a mile from the testator's home; after their father's death in 1906, they continued to live at the same address with their mother until the testator's death.

By the sixth article of his will, the testator established a trust of $250,000 for the benefit of Helen, for and during her natural life, and directed that upon her death the principal should be distributed and paid over as she by her last will and testament should direct. After the death of Helen, the defendant Schuyler W. Cummings, by the exercise of her testamentary power of appointment, became entitled to the principal of this trust, which on January 28, 1955, had a fair market value of $314,694.37. Helen was also the beneficiary for and during the

term of her natural life of the trust of all of the rest, residue and remainder of the testator's estate created by the first paragraph of article eighth. As of January 28, 1955, it had a fair market value of $1,047,208.90. Since the death of Helen, one-half part of the residuary estate, except for a reserve for contingencies, has been distributed outright under the provisions of the second paragraph of article eighth to the defendants Madeleine B. Foord, Elizabeth S. Berg and Louise S. Knobloch, the daughters of the testator's son Archibald. The remaining one-half part of the testator's residuary estate distributable upon the death of Helen is now ready for distribution by the trustee. It would have been distributable at her death to her son James, free from trust, had he survived her.

By the fifth article of his will, the testator gave to each of his three granddaughters, the children of his deceased son Archibald, the sum of $50,000. In and by the second paragraph of article eighth he directed that upon the death of Helen the residuary estate be converted into money and divided into two equal parts, one of them to be distributed "to the daughters of my deceased son Archibald, who shall then be living and the issue then living of those of them who shall then be dead leaving issue, in equal shares per stirpes and not per capita." The remaining one-half part, subject to payments to James of one-quarter of the principal when he became twenty-five years of age, one-third of the residue when he became thirty, and one-half of the residue when he became thirty-five, was to remain in trust for the use of James until he arrived at age forty, when it was to be given to him outright. As James did not survive Helen, he never received any part of the principal or income from it.

The testator, in the third paragraph of article eighth, provided that if James survived Helen and died before reaching the age of forty years, what remained of the one-half of the residuary estate held in trust for him should be distributed outright to his lawful issue surviving him, and that if he died after Helen and before he attained the age of forty years, and "no lawful issue of [James] shall survive him," it was to be distributed to "other issue hereafter born if any, of my said daughter, to be divided between them if more than one in equal shares or proportions, per stirpes and not per capita; but if upon the death of my said grandson after the death of his mother, and before attaining the age of forty years neither issue of him nor other issue of his mother shall survive him, then upon his death (under the age of forty years as aforesaid), I give, devise and bequeath the one-half part of my residuary property and estate above in this Eighth article of my will directed to be held in trust for his benefit after the death of his mother, or so much thereof as shall then remain not paid over . . . to him as aforesaid, to the issue then living of my deceased son Archibald."

It is true that a word or certain words used once in a will with a certain meaning will be given the same meaning in another part of the will unless or until a contrary intent appears. *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 348, 99 A.2d 224; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 752, 136 A. 588. The cardinal rule to be followed in construing a will is to find and effectuate the intent of the testator. In seeking that intent, the court looks first to the will itself. It examines the words and the language used in the light of the circumstances under which they were written. It studies the will as an entirety. The quest is to determine the meaning of

what the testator said and not to speculate upon what he meant to say. *First National Bank & Trust Co.* v. *Parish of St. Thomas' Church,* 141 Conn. 489, 497, 107 A.2d 246; *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643.

In articles sixth and seventh, paragraphs two and three of article eighth, and article ninth, the testator, in using the word "issue," coupled it with the words "per stirpes and not per capita," clearly showing his intention to include descendants of all degrees. Contrastively, when he intended to limit bequests to children of a named beneficiary, he did it by using the words "child" or "children," as he did in articles sixth and seventh. He consistently expressed his intention that his residuary estate should be distributed equally between the two branches of his family, with the descendants of one branch being given by representation a one-half share of it. This is clearly shown by the will itself and significantly by the second paragraph of article eighth, in which he directed the trustees, upon the death of Helen, "to convert the said trust property, real and personal, into money, and to divide the same into two equal half parts, and to pay over and distribute one of said equal half parts of the trust property in this Eighth article of my will mentioned to the daughters of my deceased son Archibald, who shall then be living and the issue then living of those of them who shall then be dead leaving issue, in equal shares per stirpes and not per capita." The word "issue," when "used as a word of purchase and unaffected by any circumstances showing a different intent, means descendants of every degree." *Dolbeare* v. *Dolbeare,* 124 Conn. 286, 289, 199 A. 555; *Pond* v. *Porter,* 141 Conn. 56, 67, 104 A.2d 228; *Mooney* v. *Tolles,* 111 Conn. 1, 6, 149 A. 515; *Hoad-*

*ley* v. *Beardsley,* 89 Conn. 270, 277, 93 A. 535; *Bart-lett* v. *Sears,* 81 Conn. 34, 39, 70 A. 33. "In the common parlance of today, issue is not ordinarily used when children are intended; indeed, its use with that meaning would sound to us strange and stilted." *Dolbeare* v. *Dolbeare,* supra, 290.

In the third paragraph of article eighth, relied upon by the defendants Madeleine B. Foord, Elizabeth S. Berg and Louise S. Knobloch, the testator, by using the words "other issue" in the clause "but if upon the death of my said grandson after the death of his mother, and before attaining the age of forty years neither issue of him nor other issue of his mother shall survive him," was expressly speaking only of Helen's issue other than James and his issue, since provision had already been made for James or James's issue surviving Helen. However, in article ninth, the provisions of which were to become effective in the event that James did not survive Helen, the testator was speaking of all of Helen's issue apart from James alone, since here there is no separate provision for the issue of James, as there was in the previous paragraph. Clearly, the words "other issue" in the third paragraph of article eighth meant issue of Helen other than the "issue of him [James]," whereas, as used in article ninth, "other issue" meant issue of Helen other than James himself. From an examination of the words and language of the will in the light of the circumstances under which they were written, it is clear that the testator did not intend that the words "other issue, if any, of my said daughter Helen, who shall survive her," in article ninth, should have the same meaning as the words "other issue" in the third paragraph of article eighth, as claimed by the defendants Madeleine B. Foord, Elizabeth S. Berg

and Louise S. Knobloch. In article ninth, the testator clearly intended, by using the words "other issue, if any, of my said daughter Helen, who shall survive her," to include her surviving descendants.

We first answer question 2 and state that the provisions under the will as to the ultimate disposition of the remaining one-half part of the residuary estate are not so uncertain and ambiguous that the disposition of it is void. The answer to question 1 is that the remaining one-half part of the residuary estate is distributable under the provisions of the will to the defendant Schuyler W. Cummings. In view of our answers to the first and second questions, we are not called upon to answer question 3.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.